```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                 :
KEVIN KELLEY
                                 :
     v.                          :  Civil Action No. DKC 2005-3151
                                 :
SEARS, ROEBUCK & CO., ET AL
                                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion of Defendants Sears, Roebuck and Co. ("Sears") and Sumitomo Corporation of America ("Sumitomo") for summary judgment pursuant to Fed.R.Civ.P. 56.  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendants' motion for summary judgment will be granted.

**I. Background**

   *A. Factual Background*

   The following facts are uncontroverted or taken in the light most favorable to Plaintiff, unless otherwise indicated. Plaintiff is a forty-three year old African American male.  On January 5, 1987, Plaintiff was hired by National Tire Warehouse ("NTW") as a sales associate for a store in Rockville, Maryland.  Approximately one year after he was hired, he was promoted to assistant manager of the NTW store in southwest Washington, D.C. because of outstanding sales and service.   Six months following this

promotion, he was promoted to the position of store manager. (Paper 1, at 3). Over the next several years, he was the store manager at several different NTW stores in the Maryland and Virginia suburbs of Washington, D.C. (Paper 21, Ex. A, Kelley Dep., at 26). Plaintiff was the manager of the Silver Spring, Maryland store when NTW was acquired by Sears in 1988. (Paper 21, Ex. D, Aiken Decl. ¶ 3; paper 21, Ex. A, Kelley Dep., at 29). In 1995, Sears changed the name of NTW to National Tire and Battery ("NTB"). (Paper 21, Ex. D, Aiken Decl. ¶ 7). TBC Corporation ("TBC") acquired NTB on November 29, 2003. (Paper 21, Ex. K, Fee Decl. ¶ 3). Sumitomo acquired TBC on November 17, 2005, pursuant to a stock purchase agreement. (Paper 21, Ex. K, Fee Decl. ¶ 4).

Plaintiff was transferred to the Beltsville, Maryland NTB store in 2000 or 2001. According to Plaintiff this transfer was a promotion because the Beltsville store had a larger sales volume than the Silver Spring store and sales volume is one of the factors that determines a store manager's compensation. (Paper 21, Ex. A, Kelley Dep., at 31). During Plaintiff's tenure at the Beltsville NTB, Douglas T. Aiken, Jr. ("Aiken") was his district manager. (Paper 21, Ex. A, Kelley Dep., at 33). According to Plaintiff, he was the most highly paid store manager in Aiken's district. (Paper 21, Ex. A, Kelley Dep., at 107).

A performance plan for improvement (PPI) is used by Sears to notify an employee that his or her job performance fails to meet

expectations and to direct the employee's attention to the areas needing improvement. (Paper 21, Ex. D, Aiken Decl. ¶ 13). On January 15, 2002, Aiken presented Plaintiff with a PPI because he felt Plaintiff's performance was deteriorating due to the fact that the Beltsville store had the highest inventory loss of any store in his district. (Paper 21, Ex. D, Aiken Decl. ¶ 14).

Aiken administered a performance discussion memorandum to Plaintiff on April 28, 2003. At the time, there were approximately 1000 NTB and Sears Auto Center stores across the nation, which comprised the Sears Automotive Group. A customer satisfaction survey of Sears Automotive Group customers rated the Beltsville store 842nd nationally. (Paper 21, Ex. D, Aiken Decl. ¶ 15).

Over a three year period beginning in 2001, the Beltsville store had the highest inventory loss of any store in Aiken's district. It was Aiken's belief that this was due to ineffective management of local purchases, failure to follow company inventory procedures, and failure to follow directions of Sears's asset protection personnel. On October 16, 2003, Aiken administered a PPI directing Kelley to follow consistently the Sears Automotive Group guidance for local purchases and to comply with Sears's inventory management guideline. (Paper 21, Ex. D, Aiken Decl. ¶ 21).

NTB store managers and assistant managers were also designated as customer service managers. Sears's intent was to place emphasis

3

on providing excellent customer service.  In accordance with this goal, Sears promulgated "customer focused standards of execution." Twice each year, Sears requires every associate to go online to the Sears Automotive Group Intranet ("Intranet") and answer a series of questions.  This process is called the "reaffirmation of commitment" and it is Sears's intent that one hundred percent of the employees at each store complete the procedure.  (Paper 21, Ex. D, Aiken Decl. ¶ 24).  In order to complete the "reaffirmation of commitment," each employee logs on to the Intranet using his or her own employee number or code.  No employee is allowed to log on to the Intranet using another employee's number.  (Paper 21, Ex. A, Kelley Dep., at 70-71).  The district managers place great emphasis on ensuring all stores in their districts achieve one hundred percent completion.

Plaintiff asserts that two of the employees on the Beltsville employee roster were no longer employed during the Fall 2003, "reaffirmation of commitment."  (Paper 1, Ex. A, Kelley Dep., at 74).  According to Plaintiff, he could not remove these individuals from his roster and only Sears's corporate office could take such an action.  (Paper 21, Ex. A, Kelley Dep., at 72).  In order to achieve the goal of one hundred percent completion of the "reaffirmation of commitment," Plaintiff logged onto the Intranet using these two individuals' employee numbers and completed the

4

"reaffirmation of commitment" for them. (Paper 21, Ex. A, Kelley Dep., at 74).

On the morning of October 27, 2003, only fifty percent of the employees at the Beltsville store had completed the "reaffirmation of commitment." At the end of that day, Plaintiff sent an e-mail to Aiken in which he stated that all of the store's employees had completed the "reaffirmation of commitment." (Paper 21, Ex. D, Aiken Decl. ¶ 25). Aiken called Plaintiff on October 30, 2003, and asked him to come to his office. During the meeting, Plaintiff admitted to Aiken that he had logged onto the Intranet using other employees' numbers and completed the "reaffirmation of commitment" for them. (Paper 21, Ex. D, Aiken Decl. ¶ 25).

Sears's Code of Conduct prohibits employees from making false or misleading statements in company records. (Paper 21, Ex. D, Aiken Decl. ¶ 25). Sears also has a policy prohibiting employees from logging on to the company computers by using an employee number other than their own and Plaintiff was aware of this policy. (Paper 21, Ex. A, Kelley Dep., at 83). Sears's "human resources guide for managers" identifies certain actions which can result in immediate termination; one such action is falsification of company records. (Paper 21, Ex. A, Kelley Dep., at 136).

During the October 30, 2003, meeting, Aiken advised Plaintiff that his employment was being terminated for falsification of company records. Teofilo Rodriguez, the manager of the NTB store

in Bowie, Maryland, replaced Plaintiff as manager of the Beltsville store. (Paper 21, Ex. D, Aiken Decl. ¶ 34).

Plaintiff never expressed to Aiken a belief that he was treated differently because of his race. (Paper 21, Ex. A, Kelley Dep., at 82). Plaintiff was aware that Sears has a policy prohibiting discrimination. Prior to his termination, Plaintiff never filed a complaint or alleged discrimination pursuant to that policy. (Paper 21, Ex. A, Kelley Dep., at 109). Plaintiff stated that he never heard a racial epithet directed at himself or anyone else during the entire time he worked for Sears. (Paper 21, Ex. A, Kelley Dep., at 86).

### *B. Procedural Background*

Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission (EEOC) on May 28, 2004. (Paper 21, at 11). Plaintiff received his Notice of Right to File Suit from the EEOC and timely filed his complaint with the court. Plaintiff filed a complaint against Sears, Sumitomo, TBC, and Tire Kingdome, Inc. on November 22, 2005, alleging that he was discriminated against and terminated because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and that he was retaliated against in violation of Title VII's anti-retaliation provision. (Paper 1, at 4-5).

On May 17, 2006, this court dismissed the claims against Defendants TBC and Tire Kingdome, Inc. without prejudice pursuant to Fed.R.Civ.P. 4(m) and Local Rule 103.8.a.  Plaintiff failed to show good cause as to why service had not been made within 120 days of filing the complaint.

On July 14, 2006, remaining Defendants Sears and Sumitomo filed a motion to dismiss or in the alternative for an order compelling discovery.  Defendants' motion to dismiss was denied on August 15, 2006, and the court directed Plaintiff to respond to discovery within 15 days.  Plaintiff partially participated in discovery.  Defendant filed the pending motion for summary judgment pursuant to Fed.R.Civ.P. 56, on October 30, 2006, to which Plaintiff never responded.[1]

## II. Standard of Review

### A. Summary Judgment

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because

---

[1] Plaintiff, who is now proceeding *pro se*, was notified by the clerk of the pendency of the motion and his opportunity to respond. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a

motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### *B. Title VII*

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotation omitted), *cert. denied*, 535 U.S. 933 (2002). In order to overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* (internal quotation omitted). More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the

9

contested employment decision." *Id.* at 391-92 (internal quotation omitted). If such evidence is lacking, the plaintiff nevertheless may proceed under *McDonnell Douglas*. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Failure to demonstrate one of the required elements is fatal to a plaintiff's ability to establish a *prima facie* case. *Morse v. Giant Food, Inc.*, No. Civ.A.DKC 2003-0087, 2005 WL 83338, at *5 (D.Md Jan. 14, 2005). Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer

intentionally discriminated against her." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

## III. Analysis

Count I of Plaintiff's complaint alleges that Defendants discriminated against him in violation of Title VII by failing or refusing to promote him, terminating him without a valid basis, compensating him less than other similarly situated white managers, and enforcing employee disciplinary measures unfairly. Count II of Plaintiff's complaint alleges that adverse employment actions were taken against him for engaging in a protected activity. Plaintiff claims that he was terminated in retaliation for complaining about disparate treatment based on his race in violation of Title VII.

### *A. Timeliness*

Claims of discrimination made with the EEOC "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Only claims based on employment actions occurring within three hundred days of the date Plaintiff filed his claims with the EEOC are considered timely. Plaintiff's allegations of discriminatory termination, failure to promote, and retaliation are considered to be discrete acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "Each incident of discrimination and each retaliatory adverse employment

11

decision constitutes a separate actionable 'unlawful employment practice'." *Id.* Therefore any such claims that are not within three hundred days of the date Plaintiff filed his claims with the EEOC are time barred. Plaintiff filed his claims with the EEOC on May 28, 2004. (Paper 21, Ex. A, Kelley Dep., at 36). Three hundred days prior to May 28, 2004, is August 1, 2003, and any allegation of discrimination that occurred prior to this date is time barred.

Plaintiff asserts that several individuals who were hired at the same time as him by NTW were promoted in shorter amounts of time or became district managers. These promotions occurred between 1991 and 1995. (Paper 21, Ex. A, Kelley Dep., at 52). These instances are discrete acts, well outside of the 300 day filing period, and therefore they are untimely.

### *B. Discrimination*

Plaintiff has put forth no direct or indirect evidence of intentional discrimination with regard to any of his claims, therefore he must proceed under the *McDonnell Douglas* burden-shifting framework. Plaintiff bears the initial burden of establishing a *prima facie* case.

Plaintiff claims that he was discriminated against when, despite being qualified, he was not promoted during the last three years of his employment. To establish a *prima facie* case of racial discrimination regarding failure to promote, Plaintiff must show:

12

(1) that he is a member of a protected class under Title VII; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications he was not promoted; and (4) that following his rejection, the position remained open or was filled by someone who is not a member of the protected class. *Burdine*, 450 U.S. at 253 n.6; *Brown v. McLean,* 159 F.3d 898, 902 (4th Cir. 1998), *cert. denied*, 526 U.S. 1099 (1999).

Plaintiff is a member of a protected class and thus meets the first element of the *prima facie* case. Plaintiff fails, however, to establish the second element because he has not submitted any evidence that he ever applied for a district manager position. Plaintiff alleges that during the last three years he worked for NTB, he would tell his district manager about once a year in casual conversation that he would relocate if a district manager position became open. (Paper 21, Ex. A, Kelley Dep., at 58). Sears posts vacant district manager positions on the Intranet so that store managers interested in positions may submit an application. Plaintiff stated that he never applied for any of the vacant district manager positions posted on the Intranet. (Paper 21, Ex. A, Kelley Dep., at 59). The failure to prove one element necessary to establish a *prima facie* case is fatal to Plaintiff's promotion claim.

13

Plaintiff alleges that he was discriminated against when he was terminated because of his race. To establish a *prima facie* case of unlawful termination pursuant to Title VII, Plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Lettieri v. Equant Inc.,* 478 F.3d 640, 646 (4th Cir. 2007) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir. 2004)(en banc)).

Plaintiff can satisfy the first and second elements of the *prima facie* case because he is a member of a protected class and he suffered an adverse employment action when he was terminated on October 30, 2003. Plaintiff fails, however, to establish the third element of the *prima facie* case in that he has not provided any evidence to establish that he was performing his job duties at a level that met Defendants' legitimate expectations at the time he was terminated.

Even assuming Plaintiff could establish a *prima facie* case, Defendants have presented a legitimate, nondiscriminatory reason for his termination which Plaintiff has not demonstrated was a pretext for racial discrimination. The undisputed evidence demonstrates that Sears has a policy that falsification of company

14

records results in immediate termination. (Paper 21, Ex. A, Kelley Dep., at 136). Plaintiff admits that he logged onto the Intranet using other employees' numbers and completed "reaffirmation of commitment" forms for these employees. (Paper 21, Ex. A, Kelley Dep., at 136; paper 21, Ex. F, at 6-4 and 6-5). This was in clear violation of Sears's policy and characterized as falsification of company records. Doreen Stachowski who was, at the time, a Region Human Resource Manager, stated that she has never known of an employee who falsified records but was not terminated. (Paper 21, Ex. J, Stachowski Decl. ¶ 6). Defendants assert that Plaintiff was terminated for violating this policy, and Plaintiff has offered no evidence to demonstrate that Defendants' stated reason is pretext.

Plaintiff alleges that he was compensated differently than other white managers and denied bonuses. In order to establish a *prima facie* case of racial discrimination in compensation under Title VII, Plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

Plaintiff claims that he was denied bonuses and paid less than similarly situated white managers. Plaintiff has not shown any adverse action with respect to his compensation as required by

15

the third element of the *prima facie* case, therefore his claim of pay disparity must fail.  Indeed, Plaintiff stated in his deposition that he was the highest paid store manager in Aiken's district. (Paper 21, Ex. A, Kelley Dep., at 51).  Thus, Plaintiff contradicts his own claim that he was paid less than other similarly situated white managers.

Plaintiff alleges that he was treated differently than other white managers in terms of discipline.  To establish a *prima facie* case of racial discrimination in the enforcement of employee disciplinary measures, Plaintiff must show: (1) that he is a member of a class protected by Title VII; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).

Plaintiff is a member of a protected class.  He has not, however, satisfied the second or third element of the *prima facie* case.  Defendants have provided evidence that Plaintiff's performance was deteriorating during the last three years of his employment. (Paper 21).  Aiken stated that the Beltsville store had the highest inventory loss of any store in its district, frequently did not meet cleanliness standards, and was not meeting customer service standards.  He also contends that Plaintiff was

16

not adequately supervising work flow, ineffectively managing local purchases, failing to follow company inventory procedures and failing to follow directions of company asset protection personnel. (Paper 21, Ex. D, Aiken Decl. ¶¶ 13-15).

Plaintiff asserts that he knew and spoke to other managers at different stores who, similar to him, were not meeting certain demands of the district manager. (Paper 21, Ex. A, Kelley Dep., at 49). Plaintiff has provided no evidence for this assertion and stated that he has no direct knowledge as to whether what he was told by other employees was true. (Paper 21, Ex. A, Kelley Dep., at 51). Therefore, Plaintiff has not established that the misconduct in which he engaged was comparable in seriousness to misconduct of employees outside of the protected class.

Even if Plaintiff could show that his misconduct was similar to other employees, he has not shown that the disciplinary measures enforced against him were more severe than those enforced against other employees. A PPI is used by Sears to notify an employee that his or her job performance fails to meet expectations and to direct the employee's attention to the areas needing improvement. (Paper 21, Ex. D, Aiken Decl. ¶ 13). Plaintiff received several PPI's and performance memoranda as a result of his poor performance. Plaintiff has no knowledge as to whether other employees were also receiving PPI's, performance memoranda, or any other type of discipline. (Paper 21, Ex. A, Kelley Dep., at 51). Plaintiff's

17

own opinions and conclusory allegations are insufficient to reflect genuine issues of material fact needed to establish the second and third elements of the *prima facie* case. *See Evans*, 80 F.3d at 960 (citing *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988)).

### *B. Retaliation*

Plaintiff alleges that he was terminated in retaliation for complaining about disparate treatment based on race. (Paper 21, Ex. A, Kelley Dep., at 94). To establish a *prima facie* case of retaliation, Plaintiff must show: (1) that he engaged in a protected activity; (2) the employer acted adversely against him; and (3) the protected activity was causally connected to the adverse action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

Plaintiff never complained of disparate treatment prior to his termination. He never expressed to Aiken that he was treated differently because of his race. Plaintiff was aware that Sears had an anti-discrimination policy, but prior to his termination he never filed a complaint or anything pursuant to such policy. (Paper 21, Ex. A, Kelley Dep., at 109). While Plaintiff did eventually file a complaint with the EEOC on May 28, 2004, this was after he was terminated on October 30, 2003. Therefore, the adverse action of termination cannot be causally connected to

Plaintiff filing his complaint and he can not establish a *prima facie* case of retaliation.

**IV. Conclusion**

For the foregoing reasons Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 will be granted. A separate Order will follow.

<pre>
                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge
</pre>